Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Timothy J. Ohms
Michael J. Ellis
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | Case No. 2:20-CR-00171-TOR |
| Plaintiff, | | Government's Sentencing Memorandum |
| v. | | |
| MIKAEEL YOUF AZEEM (a/k/a "Lawrence Williams"), | | |
| Defendant. | | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Timothy J. Ohms and Michael J. Ellis, Assistant United States Attorneys for the Eastern District of Washington, submits the following sentencing memorandum.

I.    **BACKGROUND**

   **A. The Defendant has spent fifty years victimizing women in Washington State**

   The Defendant has spent the large part of his life – some fifty years – victimizing, abusing, violating, and manipulating women in Washington State. Nothing – be it lengthy state incarceration, lengthy federal incarceration, civil commitment as a sexually violent predator, or supervised release – has managed to compel the Defendant to comply with the laws of both the United States and the State

of Washington. The Defendant's prior convictions, and the damage he has repeatedly inflicted upon women, define the Defendant's "history and characteristics" – the man appearing before the Court for sentencing is an incorrigible recidivist who has proven time and time again that he is unable to live outside an institutional setting without causing harm to others. The following is a short history of the Defendant's known victims:

### 1. Victim 1

In 1972 the Defendant, a juvenile, found Victim 1 in a secluded area of a park. *See* ECF No. 33 at ¶ 40. The Defendant, acting with an accomplice, overpowered Victim 1, kidnapped her to an abandoned area, and raped her. *See id.*

### 2. Victim 2

Also in 1972, the Defendant, acting with the same accomplice, abducted Victim 2 off the street, took her to a secluded backyard, and held her down while his accomplice raped her. *See id.* at ¶ 41. While the rape was ongoing, the Defendant groped Victim 2 and masturbated. *See id.* The Defendant was convicted of rape following the incidents involving Victims 1 and 2. *See id.* at ¶ 42.

### 3. Victim 3

On September 24, 1980, the Defendant robbed personal items from Victim 3 through the threatened use of force. *See id.* at ¶ 46. The Defendant, armed with a razor blade, had sexual intercourse with Victim 3 during the robbery. *See id.* The Defendant was convicted of rape in the first degree with a deadly weapon following the incident involving Victim 3. *See id.* at ¶ 43.

### 4. Victim 4

On November 1, 1980, the Defendant approached Victim 4 and demanded money. *See id.* at ¶ 45. After Victim 4 refused, the Defendant hit her in the head several times with a large metal wrench. *See id.* The Defendant then dragged Victim 4 to a secluded area and undid her pants. *See id.* A car then appeared, and the Defendant

1  fled. *See id.* The Defendant was convicted of assault in the second degree following

2  the incident involving Victim 4. *See id.* at ¶ 43.

3         **5.  Victim 5**

4         In January 2001, the Defendant was living with his nephew who was Victim 5,

5  a sixteen-year-old girl's, boyfriend. *See id.* at ¶ 52. The Defendant made sexual

6  advances towards the teenager and would masturbate in her presence. *See id.* The

7  Defendant grabbed Victim 5's breasts through her clothing a number of times. *See id.*

8  The Defendant, although originally charged with assault in the second degree, was

9  convicted of assault in the fourth degree following the incident involving Victim 5.

10  *See id.* at ¶¶ 49, 52.

11         **6.  Victim 6**

12         Victim 6 is the victim of the Defendant's instant offense of conviction. The

13  Defendant, aware that Victim 6 had a social security payee in California due to

14  Victim 6's mental health and substance abuse issues, engaged in a scheme by which

15  the Defendant stole Victim 6's social security payments. *See id.* at ¶ 12. Victim 6 also

16  originally reported to her social security payee that she had had unwanted sexual

17  relations with the Defendant. *See id.* at ¶ 36. However, upon further investigation by

18  the Spokane Police Department and an interview with Victim 6, these allegations were

19  not able to be substantiated. *See id.* As noted by the Spokane Police Department

20  investigators, Victim 6 had difficulty recalling specific events concerning the

21  Defendant and disclosed that she suffered from several mental illnesses. *See id.* at

22  ¶ 15.

23     **B.  The Defendant's brief stints at liberty in the community are marked

24          with repeated criminal conduct**

25         The Defendant has spent stunningly little time at liberty in the community over

26  the past forty years. This is not surprising – from 1980 onwards, the Defendant has

27  repeatedly demonstrated his inability to comply with the law. These lengthy periods of

28

incarceration or commitment, however, have not dampened the Defendant's recidivism.

The Defendant was incarcerated for most of the 1980's and 1990's following his convictions for rape in the first degree and assault in the second degree, with a short period in the community from roughly 1986 to 1988 when the Defendant was released on a work release program. *See id.* at ¶ 47. The Defendant was incarcerated for various stints (116 days, 54 days, 30 days, and 12 months) between his release from custody in 2000 and his remand (and subsequent commitment) as a sexually violent predator in, respectively, 2002 and 2004. *See id.* at ¶¶ 49, 53, 88. After spending 2002 through 2008 on McNeil Island, the Defendant was transferred to federal custody as a result of his orchestration of a crack cocaine distribution conspiracy. *See id.* at ¶¶ 88–89. Following the Defendant's release from federal custody in 2015, the Defendant was returned to McNeil Island until his release to a Least Restrictive Alternative in 2019. *See id.* at ¶¶ 90–91. The Defendant was then fully released from his civil commitment on January 16, 2020. *See id.* at ¶ 91.

In sum, over the last forty years the Defendant has spent roughly the following time fully at liberty in the community – a short time between 1986 and 1988 (during which the Defendant committed a felony for leaving his designated work release program), a short time between 2000 and 2002 (during which the Defendant committed multiple criminal offenses), and from February to August 2020, when the Defendant schemed to steal Victim 6's social security payments. Perhaps five years out of the last forty at liberty in the community, and the Defendant nonetheless managed to repeatedly commit new criminal offenses.

## II.   SENTENCING CALCULATIONS AND RECOMMENDATION

### A. Base offense level & enhancements

The Government agrees that the Defendant's base offense level is seven (7), and that two (2) levels are added as the Defendant intentionally selected the victim due to her vulnerability. Further, the Government agrees with the Presentence

Investigation Report that the Defendant merits a two (2) level reduction under USSG § 3E1.1(a). Finally, the Government agrees that the Defendant has five (5) criminal history points and a resulting Criminal History Category of III. As such, the Defendant's total, adjusted offense level is seven (7) for a guideline sentencing range of 4-10 months.

### B. Motions for both an upward departure and an upward variance

The Government moves for both an upward departure based on the inadequacy of the Defendant's Criminal History Category and an upward variance when considering the relevant factors under 18 U.S.C. § 3553(a). The Government ultimately recommends that the Court impose a sentence of 60 months imprisonment, consecutive to the 12 months imprisonment the Government is recommending as a result of the Defendant's violation of the conditions of supervised release in Case No. 2:20-CR-00119-TOR.

### 1. The Defendant's prior unscored criminal conduct and repeated recidivism renders Criminal History Category III inadequate

Under USSG § 4A1.3(a), the Court can depart "horizontally" – *i.e.* by increasing a defendant's Criminal History Category – "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *See* USSG § 4A1.3(a)(1). Such "information" may include "[p]rior sentence(s) not used in computing the criminal history category" and "[p]rior similar adult criminal conduct not resulting in a criminal conviction." *See* USSG § 4A1.3(a)(2)(A), (E). "If the court finds that" a prior sentence imposed outside of the time period noted in USSG § 4A1.2(e) "is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3." *See* USSG § 4A1.2 cmt. n.8.

Per the Presentence Investigation Report, the Defendant has the following serious prior convictions that are not scored pursuant to § 4A1.2(e):[1]

### a. Rape (juvenile conviction) – 1972

The Defendant was convicted of at least one count of rape as a juvenile in 1972.[2] *See* ECF No. 33 at ¶ 42. Following the guilty adjudication, the Defendant was sentenced to thirteen months imprisonment at a juvenile detention facility.[3] *See id.* Victims 1 and 2 were the victims of the Defendant's conduct, as described above.

### b. Rape in the first degree with a deadly weapon and assault in the second degree – 1980

The Defendant was convicted of rape in the first degree with a deadly weapon and assault in the second degree in 1980. *See id.* at ¶ 43. The Defendant was sentenced to 240 months imprisonment on the rape conviction and a concurrent 120 months imprisonment on the assault conviction. *See id.* Following a conviction in 1988 for willfully failing to return to a work release program, the Defendant was incarcerated until 2000. It therefore seems likely that the Defendant, having been released in some form, was reincarcerated following the 1988 conviction for the balance of his twenty-year 1980 sentence. Victims 3 and 4 were the victims of the Defendant's conduct, as described above.

### c. Assault in the fourth degree – 2001

The Defendant was convicted of assault in the fourth degree in 2001. *See id.* at ¶ 49. This conviction began life as a felony charge – assault in the second degree, predicated upon the Defendant's intent to commit felony indecent liberties with a

---

[1] The facts underlying these convictions are outlined above when discussing the numerous victims of the Defendant's criminal conduct.

[2] While the Presentence Investigation Report notes that the Defendant took part in the rape of two separate women, it is unclear whether he accrued one or two rape convictions. *See* ECF No. 33 at ¶¶ 40–42.

[3] The Government notes that, in addition to not being assigned criminal history points under USSG § 4A1.2(e), the Defendant's juvenile rape conviction would separately not be assigned criminal history points under USSG § 4A1.2(d).

Government's Sentencing Memorandum - 6

sixteen-year-old girl. *See id.* at ¶ 52. While ultimately a gross misdemeanor conviction, the Defendant's 2001 conduct is, as with his remaining criminal history, indicative of the Defendant's recidivism and is "serious" under § 4A1.3. Victim 5 was the victim of the Defendant's conduct, as described above.

> **d. The above criminal conduct is both serious and demonstrates the Defendant's incorrigible recidivism, thus justifying an upward departure to Criminal History Category VI**

The Defendant is an extremely dangerous, opportunistic career criminal. In his youth, the Defendant accrued three convictions for sexually assaulting, or attempting to sexually assault, strangers. Further, the Defendant, after serving what amounted to a twenty-year Washington State prison sentence, reoffended almost immediately by making sexual advances and inappropriately touching a teenager. None of this conduct scores, and the Defendant's Criminal History Category of III accordingly under-represents the seriousness of the Defendant's criminal past. *See United States v. Bad Marriage*, 392 F.3d 1103, 1110 (9th Cir. 2004) (noting that "[w]hile the Guidelines and Ninth Circuit precedent do not establish that prior convictions must always be serious in order to support an upward departure, they certainly indicate that the seriousness of past convictions is an important factor to be considered"). Further, the Defendant committed these offenses over almost thirty years – and then continued to violate the law by committing the offenses that do score: conspiracy to distribute cocaine base and witness tampering. The Defendant has spent almost five decades demonstrating the strong "likelihood that the defendant will commit other crimes." *See* USSG § 4A1.3(a)(1). An upward departure based on the inadequacy of the Defendant's Criminal History Category is justified.

> **2. The Court should apply an upward variance under 18 U.S.C. § 3553(a) to impose a 60-month sentence**

In determining the appropriate sentence, the Court should consider the factors as set forth in 18 U.S.C. § 3553(a). "A 'variance' . . . occurs when a judge imposes a

sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a)." *See United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012) (quoting *United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009)). Non-guideline sentences premised on upwards variances have been upheld on appeal for numerous reasons. *See*, *e.g., United States v. Door*, 996 F.3d 606, 623 (9th Cir. 2021) (affirming sentence 101 months above top of the guideline where the district court explained that the non-guideline sentence was justified based on "[r]espect for the law, deterrence, [and] protection for the community" as well as the "district court's determination that Door was an extremely dangerous person who had shown an unwillingness to change"); *United States v. Doe*, 842 F.3d 1117, 1122–23 (9th Cir. 2016) (affirming sentence 54 months above top of the guideline where the district court found that "[t]he Guideline sentence . . . does not adequately reflect the seriousness of the defendant's conduct in terms of the length, the nature of his conduct, and the profound effect on the victim").

At Criminal History Category VI, as urged by the Government, the Defendant's guideline range rises to 15-21 months. The Government's recommended 60-month sentence, therefore, requires an upward variance. As described below, such a variance is justified by the Defendant's "history and characteristics" – to include his lifetime of recidivism, criminal behavior targeting women, and manipulative nature – as well as protection for the community. As noted above, no court – federal or state, criminal or civil – has managed to stop the Defendant's criminal conduct. Given that the Defendant continues to reoffend and prey on the vulnerable, there is no reason to believe he will cease committing crimes if given a guideline sentence.

### a. The nature and circumstances of the offense and the history and characteristics of the Defendant

The nature and characteristics of the Defendant's conduct warrant a sentence of 60 months. As noted above, the Defendant has spent his entire adult life engaging in recidivist criminal conduct targeting women. The Defendant's early misconduct was

primarily physical – raping or otherwise sexually abusing multiple women. More recently the Defendant has utilized his apparent charms to manipulate women into giving him what he wants – ranging from hundreds of thousands of dollars from a McNeil Island staff member to a mentally ill homeless woman's social security payments. The Defendant defines recidivism – nothing has been successful in curbing the Defendant's criminal behavior.

As documented in the Presentence Investigation Report, in 1992 the Defendant was described as "a man who can create a favorable impression of himself as a model rehabilitated prisoner, keeping his behavior under relatively good control most of the time. But it is all an ingenuine, manipulative act. Beneath the surface lies a narcissistic, antisocial, sexually disturbed, drug and alcohol abusive man." *See* ECF No. 33 at ¶ 87. This 1992 assessment remained true in the mid-2000's – the Defendant manipulated a McNeil Island staff member into both believing that he had been wrongly designated a sexually violent predator and providing him with hundreds of thousands of dollars. *See id.* at ¶ 60. It remains true to this day – the instant conduct involved the Defendant manipulating a mentally ill homeless woman and her social security payee to obtain social security payments. *See id.* at ¶ 12. There is no reason to think that the Defendant has shed these negative character traits while incarcerated over the last year.

The conduct involved in the Defendant's instant offense is also highly concerning. The Defendant, posing as an employee of a treatment agency, repeatedly called and emailed with Victim 6's social security payee until a check was put in the mail. The Defendant was lying – he had not provided any services to Victim 6 and intended solely to steal her social security payments. The Defendant's actions concerning Victim 6, intentionally targeting the most vulnerable, demonstrate the danger he continues to pose to the community.

//

//

Government's Sentencing Memorandum - 9

**b. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment**

For the reasons discussed above, the Government asks that the Court sentence the Defendant to 60 months imprisonment. Considering the nature of the offense and the Defendant's history, a 60-month sentence is appropriate to reflect the seriousness of the conduct, promote respect for the law, and provide just punishment. The Defendant is a serial recidivist and has given the Court no reason to believe that he would suddenly comport his behavior with the laws of either the United States or the State of Washington if given a guideline sentence.

**c. The need for the sentence imposed to afford adequate deterrence to criminal conduct**

As discussed above, a 60-month sentence will deter future criminal activity by the Defendant by removing him from the community, thereby rendering him unable to continue to violate the law.

**d. The need for the sentence imposed to protect the public from further crimes of the Defendant**

As discussed above, a 60-month sentence will protect the public from future criminal activity by the Defendant.

**e. The need for the sentence imposed to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The Defendant may have additional opportunities for any necessary substance abuse or mental health treatment while incarcerated with the Bureau of Prisons.

**f. The kinds of sentences available**

The Court may sentence the Defendant to not more than twenty years in prison, a fine of up to $250,000, and three years of supervised release.

//

//

Government's Sentencing Memorandum - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**g.  The kind of sentence contemplated by the Sentencing Guidelines**

The Sentencing Guidelines contemplate either a term of imprisonment or a probationary sentence. For the reasons discussed above, a probationary sentence would be wholly inappropriate and unwarranted.

**h.  Any pertinent policy statements issued by the Sentencing Commission**

There are no pertinent policy statements in this case.

**i.  The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct**

A sentence of 60 months, while above the guideline range, is warranted for the reasons described above.

**j.  The need to provide restitution to any victims of the offense**

Per 18 U.S.C. § 3663A, the Court must order restitution for Victim 6 in the amount of $2,450.

**III.    CONCLUSION**

The Government recommends that the Court impose a 60-month sentence. Given the Defendant's "history and characteristics" such a sentence is sufficient, but not greater than necessary, to accomplish the purposes outlined in 18 U.S.C. § 3553(a). As addressed in the Government's sentencing memorandum concerning the Defendant's violations of supervised release in Case No. 2:20-CR-00119-TOR, the Government further recommends a consecutive 12-month sentence for the Defendant's breach of the Court's trust. This results in a total sentence of 72 months. The Government further recommends that no fine be imposed, $2,450 of restitution be awarded to Victim 6, and that the Defendant be placed on three (3) years of supervised release with the conditions outlined in the Presentence Investigation Report. *See* ECF No. 33 at 22–27.

1        As noted throughout this memorandum, the Defendant has spent his entire adult

2   life victimizing women in Washington State. Nothing – not lengthy prison terms, the

3   watchful eye of the United States Probation Office, or isolating the Defendant on an

4   island – has compelled the Defendant to obey the law and comport himself in a

5   manner acceptable to law-abiding persons in the Eastern District of Washington. The

6   Government's recommended sentence will stop the Defendant from continuing to

7   engage in criminal conduct by placing him in the custody of the Bureau of Prisons –

8   which, as proven time and time again by the Defendant, seems to be the only way to

9   stop the Defendant from violating the law. The Government respectfully asks that the

10  Court follow the Government's recommendation.

11       Dated:   October 14, 2021.

12                    Vanessa R. Waldref

13                    United States Attorney

14                    *s/Timothy J. Ohms*

15                    Timothy J. Ohms

16                    Assistant United States Attorney

17                    *s/Michael J. Ellis*

18                    Michael J. Ellis
                      Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

Government's Sentencing Memorandum - 12

1

## <u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on October 14, 2021, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF System which will send notification of

4  such filing to the following: J. Houston Goddard

5

6

7                                    *s/ Michael J. Ellis*
                                   Michael J. Ellis
8                                    Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28